20 P.3d 719

STATE of Idaho, Plaintiff–Respondent,

v.

Charles Robert McGUIRE,
Defendant–Appellant.

No. 26186.

Court of Appeals of Idaho.

March 12, 2001.

Ronaldo A. Coulter, State Appellate Public Defender; Paul S. Sonenberg, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Alan G. Lance, Attorney General; Alison A. Stieglitz, Deputy Attorney General, Boise, for respondent.

SCHWARTZMAN, Chief Judge.

Charles Robert McGuire appeals from his conviction for sexual abuse of a child under the age of sixteen, asserting that the district court improperly admitted the testimony of his three adult daughters. McGuire also appeals from his sentence and the district court's relinquishment of jurisdiction, claiming an abuse of discretion as to both. We affirm.

## I.

### FACTS AND PROCEDURE

According to the state's evidence presented at trial, when S. M., now sixteen years old, was thirteen years old, McGuire, her father, asked her to rub his feet while he sat on his bed wearing only a T-shirt and his underwear. McGuire, using his legs, pulled S.M. toward him until her back rested against his chest. McGuire then began kissing S.M.'s neck and continued to do so for several minutes. McGuire's arms and legs were wrapped around S.M. during this time. S.M. then told McGuire she was going to bed in order to remove herself from the situation.

A few months later, McGuire approached S.M. while she sat in a chair watching television. McGuire asked S.M. to get up and would not tell her why. McGuire then sat where S.M. had been sitting and asked her to sit on his lap. S.M. declined, explaining that she was too heavy to sit on McGuire's lap. McGuire insisted that she was not too heavy and again asked S.M. to sit on his lap. S.M. eventually sat on McGuire's lap with her back to him. McGuire put his arms on S.M.'s thighs and then began touching S.M.'s hips and rubbing her stomach just above her vaginal area. McGuire rubbed S.M. in this manner for "quite a while." McGuire also rubbed S.M.'s inner thigh near her vaginal area during this incident. As before, McGuire kissed S.M.'s neck during this en-

counter. S.M. told McGuire she was going to bed, and as she was leaving McGuire kissed her on the mouth for two or three seconds.

McGuire was subsequently charged with sexual abuse of a child under sixteen years of age, I.C. § 18–1506. At trial, S.M. testified in conformance with the facts previously set forth. Thereafter, the state sought to admit the testimony of McGuire's three adult daughters from a previous marriage and McGuire's sister, all of whom claimed they were previously sexually abused by McGuire when they were minors. Pursuant to Idaho Rule of Evidence 404(b), the district court admitted the testimonial evidence of McGuire's daughters, determining that some of this testimony was relevant and that the danger of unfair prejudice did not substantially outweigh its probative value. The court, however, excluded the testimony of the sister. McGuire testified in his own defense, generally denying any sexual contact or having any sexual intent when he may have touched S.M. during these incidents.

McGuire was subsequently convicted of sexual abuse of S.M. and the district court sentenced him to a unified term of ten years, with three years fixed, but with a period of retained jurisdiction. After McGuire completed his rider, the district court relinquished jurisdiction over him, but modified the fixed portion of his sentence to one year. McGuire appeals from his conviction, sentence and the relinquishment of jurisdiction.

## II.

### EVIDENCE OF McGUIRE'S UNCHARGED SEXUAL MISCONDUCT WAS PROPERLY ADMITTED UNDER I.R.E. 404(b)

#### A. Standard Of Review

In determining whether evidence of a defendant's prior uncharged misconduct should be admitted under Idaho Rule of Evidence 404(b), the court must apply a two-tiered analysis. *State v. Moore*, 120 Idaho 743, 745, 819 P.2d 1143, 1145 (1991); *State v. Spor*, 134 Idaho 315, 318, 1 P.3d 816, 819 (Ct.App.2000). First, the court must determine whether "the evidence is relevant to a material and disputed issue concerning the crime charged." *Moore*, 120 Idaho at 745, 819 P.2d at 1145. Second, the court must determine if the probative value of the evidence is substantially outweighed by the danger of unfair prejudice to the defendant. I.R.E. 403. When considering a trial court's admission of I.R.E. 404(b) evidence, we exercise free review of the trial court's determination of relevance and review the determination that the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice under an abuse of discretion standard. *State v. Dragoman*, 130 Idaho 537, 544–45, 944 P.2d 134, 141–42 (Ct.App.1997).

#### B. Analysis

The testimony of McGuire's three adult daughters, T.C., K.R. and L.T., was admitted, in limited form, by the district court. T.C. testified that when she was seven years old in 1974, McGuire, a pastor at the time, would take her to church with him and have her lie down in the sanctuary of the church while he rubbed and fondled her between her legs. T.C. also described a time when McGuire woke her by kissing her neck while she slept. Notably, the nature of the kissing described by T.C. was similar to that described by S.M. When T.C. was ten or eleven years old, McGuire would ask her to massage his feet, often keeping her up after everyone else in the household had gone to bed. This foot massaging was often a precursor to McGuire kissing T.C. on the lips and fondling her chest and vaginal area. Just prior to her twelfth birthday in 1979, T.C. was removed from McGuire's home and began living with her aunt. About five years later, McGuire admitted his conduct to T. C., but at the same time told her she was a good kisser.

K.R., who was five years old in 1974, lived with McGuire until she was removed from the home at the same time as T.C.; K.R. was about ten years of age at that time. K.R. testified that between the ages of five and nine, McGuire often requested that she give him foot rubs, and that the foot rubbing often preceded McGuire's sexual abuse of her. McGuire frequently rubbed K.R.'s vaginal area and inner legs during these encounters.

L.T., who lived in McGuire's household at the same time as T.C. and K.R. and was subsequently removed at the same time in 1979, testified that McGuire once rubbed her vaginal area during a camping trip and at another time had requested that she rub lotion on him, which ultimately escalated into McGuire molesting L.T. L.T. testified that she gave McGuire foot rubs "all the time." L.T. could not recall if these foot rubs ever led to sexual touching.

The district court precluded McGuire's sister from testifying, finding that the abuse she alleged was too "remote in time and also [did not pertain to] a father-daughter situation." The district court also limited the testimony of T.C., K.R. and L.T. to acts of sexual misconduct against them that were similar to those alleged by S.M. Specifically, the district court excluded testimony regarding previous genital-genital contact, genital-oral contact and incidents where McGuire showered nude with his daughters individually.

McGuire asserts that the district court erred in admitting the above testimony because it was not relevant to a material and disputed issue and its probative value was substantially outweighed by the danger of unfair prejudice.

### 1. Relevancy under I.R.E. 404(b)

Idaho Rule of Evidence 404 states:

(a) Character Evidence Generally. .Evidence of a person's character or a trait of character is not admissible for the purpose of proving that the person acted in conformity therewith on a particular occasion

. . .

. . .

(b) Other Crimes, Wrongs, or Acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

This rule generally prevents the admission of previous bad acts to establish a person's character for the purpose of showing that the person acted in conformity with that character. The rule, however, may allow such evidence to prove motive, opportunity, intent, preparation, identity, or general plan to exploit and sexually abuse an identifiable group of young female victims. *See State v. La-Belle*, 126 Idaho 564, 567–68, 887 P.2d 1071, 1074–75 (1995); *Moore, supra.*

In the case before us, the district court ruled that the above testimony was relevant because McGuire's intent in touching and kissing S.M. was an issue in the case. Indeed, it was made an integral issue because McGuire insisted that, although he committed the acts alleged with S.M., he did not do so with the intent to gratify the lust, passions, or sexual desires of himself or S.M. Idaho appellate courts have previously affirmed the admission of similar evidence where the intent of the defendant was at issue. *See State v. Tapia*, 127 Idaho 249, 254–55, 899 P.2d 959, 964–65 (1995) (wherein the admission of testimonial evidence that the defendant was "interested in" and "after" his minor victim prior to the alleged sexual abuse of her, was affirmed by the Idaho Supreme Court because it was relevant to "his intent to gratify his sexual desire for this adolescent girl"); *Spor*, 134 Idaho at 319, 1 P.3d at 820 (concluding that the district court properly admitted evidence of prior uncharged misconduct because it was relevant to show the defendant's "lustful intent"). McGuire's other daughters' testimony tends to make his unlawful intent—a fact of consequence and a required element of the crime charged under I.C. § 18–1506—more probable, and therefore relevant under I.R.E. 401.

Secondly, the Idaho Supreme Court, after reviewing the disputed testimony, also stated in *Moore:*

We hold that there was no abuse of discretion by the trial court in ruling that the proffered testimony demonstrated a common scheme or plan. The testimony demonstrates Moore's general plan to exploit and sexually abuse an identifiable group of young female victims. The testimony . . . reveals a continuing series of alleged similar sexual encounters directed at the young female children living within his household.

120 Idaho at 745, 819 P.2d at 1145. We find the same to be true in the instant case, even though separated by a generation. Each of McGuire's victims testified about foot rubbing sessions, and three of the four indicated that this conduct had escalated into sexual abuse. Three of the four victims testified that McGuire kissed them on the neck during these encounters and manually fondled and touched them in the vaginal area. All of these incidents of misconduct were committed by McGuire against his own female children while living as minors in his household.[1] *See also State v. Maylett*, 108 Idaho 671, 701 P.2d 291 (Ct.App.1985).

Next, our Supreme Court has additionally noted that due to the particular proof problems in sexual abuse cases involving minor victims, corroborating evidence may still be relevant. *Moore*, 120 Idaho at 745, 819 P.2d at 1145. "Too often the determination of the case rests strictly upon establishing that the victim's testimony is more credible than that of the alleged perpetrator." *Id.* at 746, 819 P.2d 1143; *see also State v. Tolman*, 121 Idaho 899, 904, 828 P.2d 1304, 1309 (1992). By nature, such crimes usually have only two witnesses, the alleged victim and the defendant. Consequently, the determination of the case often rests upon establishing and corroborating the victim's credibility in relation to that of the alleged perpetrator. *State v. Cross*, 132 Idaho 667, 670–71, 978 P.2d 227, 230–31 (1999); *Tolman, supra*. In the instant case, the testimony of T.C., K.R. and L.T. lent immediate credibility to S.M.'s account of how McGuire abused her because each of McGuire's three adult daughters testified that McGuire had abused them in a similar fashion under similar circumstances, including the common precursory foot rubbing.

Lastly as to relevance, we find it necessary to address the *remote* nature of the uncharged misconduct in this case. In *Moore*, the Idaho Supreme Court affirmed the admission of evidence of uncharged misconduct occurring eleven years before the conduct that initiated the criminal case. The *Moore* Court also impliedly approved a fourteen-year gap by positively citing and discussing *Staggers v. State*, 120 Ga.App. 875, 172 S.E.2d 462 (1969). This case, however, presents the circumstance of an eighteen to twenty-three-year gap and the question whether such lapse makes the uncharged misconduct too remote to be relevant to the instant charge. "Remoteness and similarity must be considered together because the two concepts are so closely related; . . . a prior bad act, despite its remoteness, may still be relevant if it is strikingly similar to the charged offense. Conversely, less similarity may be required where the prior act is closer in time to the charged incident." *Fisher v. State*, 641 N.E.2d 105 (Ind.Ct.App.1994). The district court recognized the need to weigh the relevancy of the testimony of McGuire's three adult daughters against its remoteness in time, and went on to say: "While I am aware of and appreciate the defendant's arguments that these [incidents of alleged prior misconduct] are extremely remote in time, on the other hand, they are relevant."

Based upon the specific facts of this case, i.e., that the nature of McGuire's abuse was distinctively tailored and all of his victims were his minor daughters living in his household, we conclude that the uncharged misconduct, some of which is alleged to have occurred twenty-three years prior to the instant offense, was not too remote to be relevant. As in *Moore*, McGuire's "opportunity to enact his plan or scheme of sexual abuse . . . only occurred when there was a minor female present in his home and when she reached the appropriate age for [his] designs." 120 Idaho at 747, 819 P.2d at 1147. After McGuire's three daughters were removed from the household in 1979, he was without opportunity to molest them in the

---

1. McGuire argues these incidents are not properly considered a common plan or scheme under Rule 404(b) because his victims' ages ranged from seven to thirteen years old. We conclude that this does not make McGuire's group of victims any less identifiable; they all are his natural children, all are female, and all were minors living in his household at the time of the instanc- es of misconduct. In *Adrian v. People*, 770 P.2d 1243, 1246 (Colo.1989), the Supreme Court of Colorado affirmed the trial court's admission of evidence of misconduct after finding that a fifteen-year remoteness of the evidence was outweighed by the similarities among the incidents, including the children's ages of between five and eleven—a six-year range, as in the instant case.

home. It was not until he remarried, S.M. was born and she grew to a suitable age that McGuire could begin his former practice of sexual abuse. *See, e.g., United States v. Meacham,* 115 F.3d 1488, 1494–95 (10th Cir.1997) (holding that evidence that defendant committed other instances of child sexual abuse almost thirty years earlier was properly admitted where all victims were related to the defendant); *Smith v. State,* 745 So.2d 284 (Ala.Crim.App.1998) (holding that evidence of similar acts of sexual abuse committed twenty years prior to the charged offenses was admissible because the lapse in abuse was mainly attributable to a substantial time span where no children resided with the defendant); *State v. Weatherbee,* 158 Ariz. 303, 762 P.2d 590, 592 (App.1988) (holding that a lapse of over twenty years did not make evidence of prior uncharged misconduct too remote to be relevant because all of the incidents involved abuse by the defendant of his own children in his home; further reasoning that "it was a number of years before the daughters of the new family reached an appropriate age for appellant to again begin his sexual contacts"); *see also Staggers* 172 S.E.2d at 464.

Accordingly, we hold that the district court properly found the testimony of McGuire's three adult daughters to be relevant in the face of McGuire's objection that the alleged prior misconduct was too remote in time.

### 2. Probative value of the testimony versus the danger of unfair prejudice

Idaho Rule of Evidence 403 authorizes the exclusion of otherwise relevant evidence if its probative value "is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." The language of I.R.E. 403 tilts in favor of admissibility.

Although the evidence was decidedly prejudicial to McGuire's case—as is most probative evidence offered by the state in a criminal prosecution—a trial court's inquiry focuses on the unfairness of that prejudice. *State v. Palmer,* 110 Idaho 142, 146, 715 P.2d 355, 359 (Ct.App.1985). The balancing func-

tion required by this rule is committed to the discretion of the trial court, and that court's assessment will not be disturbed on appeal absent an abuse of discretion. *State v. Porter,* 130 Idaho 772, 784, 948 P.2d 127, 139 (1997); *State v. Kay,* 129 Idaho 507, 516, 927 P.2d 897, 906 (Ct.App.1996). Although we have affirmed the district court's determination that the testimonial evidence of uncharged misconduct was not too remote to be relevant, we remain vigilant in determining if the evidence was so remote as to skew the I.R.E. 403 balance in favor of exclusion. *See Fisher,* 641 N.E.2d at 109 (stating that "[r]emoteness is to be considered in determining relevance, and ultimately, admissibility"). '

McGuire claims that the district court should have found the probative value of the evidence was substantially outweighed by the danger of unfair prejudice because the evidence was not demonstrative of a common plan or scheme and was too remote. We have already concluded, however, that this evidence was relevant as evidence of McGuire's intent, as corroboration of S.M.'s testimony and as evidence of McGuire's general plan to sexually exploit an identifiable group of young female victims, i.e., his own minor female children residing in his home.

In admitting the evidence, the district court stated: "I think as long as they are the same type of conduct, they are probably not unduly prejudicial.... I am pretty skeptical about letting in the digital penetration and fondling of the penis and genital-genital contact in that I think that is so prejudicial." The court further stated:

> It would seem to me that the prejudice or the risk of a jury simply concluding that if the defendant were capable of such additional types of acts against other daughters at other times, that the jury might well lose track of what they were having to decide.... [T]herefore I am going to—I am going to keep the limitation to the allegations or the claims of fondling in the vaginal area or kissing by the defendant and exclude testimony from the three other daughters [regarding other contacts.]
>
> ... the testimony by the three daughters of similar type conduct ... is; I think

relevant and not so unduly prejudicial ... it is appropriate to let that material in.[2]

We conclude that the district court properly perceived the issue as one of discretion, considered the probative value of the evidence in relation to the theory of logical relevance under which it was offered and reached its decision by an exercise of reason. Examining the admitted testimony of T.C., K.R. and L.T., and the fashion in which their testimony was limited by the district court, we cannot say that the district court abused its discretion in admitting this evidence.

Accordingly, we hold that the district court properly admitted the testimony of the three older daughters as sufficiently probative that it was not outweighed by the danger of unfair prejudice. *State v. Medina*, 128 Idaho 19, 24–25, 909 P.2d 637, 642–43 (Ct.App. 1996).

### III.

## THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION BY IMPOSING AND LATER ORDERING INTO EXECUTION A TEN–YEAR SENTENCE, WITH ONE YEAR FIXED [3]

■ Where a sentence is within the statutory limits, the appellant bears the burden of demonstrating that it is a clear abuse of discretion. *State v. Hedger*, 115 Idaho 598, 604, 768 P.2d 1331, 1337 (1989). A sentence may constitute a clear abuse of discretion if it is unreasonable upon the facts of the case. *State v. Broadhead*, 120 Idaho 141, 145, 814 P.2d 401, 405 (1991), *overruled on other grounds by State v. Brown*, 121 Idaho 385, 825 P.2d 482 (1992).

[A] term of confinement is reasonable to the extent it appears necessary, at the time of sentencing, to accomplish the pri-

mary objective of protecting society and to achieve any or all of the related goals of deterrence, rehabilitation or retribution applicable to a given case. A sentence of confinement longer than necessary for these purposes is unreasonable.

Such determinations cannot be made with precision. In deference to the discretionary authority vested in Idaho's trial courts, we will not substitute our view for that of a sentencing judge where reasonable minds might differ. An appellant must show that, under any reasonable view of the facts, his sentence was excessive in light of the foregoing criteria.

*Broadhead*, 120 Idaho at 145, 814 P.2d at 405, *quoting State v. Toohill*, 103 Idaho 565, 568, 650 P.2d 707, 710 (Ct.App.1982).

■ Where an appellant asserts that the sentencing court imposed an excessively harsh sentence, we conduct an independent review of the record and focus upon the nature of the offense and the character of the offender. *State v. Hernandez*, 121 Idaho 114, 118, 822 P.2d 1011, 1015 (Ct.App.1991); *State v. Reinke*, 103 Idaho 771, 772, 653 P.2d 1183, 1184 (Ct.App.1982). With respect to sentences imposed under the Uniform Sentencing Act,

the minimum period [of confinement] generally will be treated as the probable measure of confinement for the purpose of sentence review. By focusing on this period, we do not wholly disregard the aggregate length of the sentence, nor do we suggest that a prisoner will be *entitled* to parole when the minimum period has elapsed; but we do recognize that he will be *eligible* for parole at that time.

*State v. Sanchez*, 115 Idaho 776, 777, 769 P.2d 1148, 1149 (Ct.App.1989). Under I.C. § 18–1506(4), the maximum penalty for sexual abuse of a child under sixteen years of age

---

2. We note that the district court also instructed the jury that:

> Evidence of other uncharged criminal acts by the defendant has been introduced. Such evidence, if believed, was not received and may not be considered by you to prove the criminal propensity of the defendant or his character.
>
> Such evidence was received and may be considered by you only for the limited purpose

of determining the defendant's intent or common scheme or plan or absence of mistake or accident in committing the crime for which he is charged.

3. The original sentence of ten years, with three years fixed, was subsequently "reduced" or modified to ten years, with only one year fixed, at the time the district court relinquished jurisdiction.

is fifteen years in prison. McGuire's minimum period of confinement is one year. Accordingly, he must demonstrate that this one-year period was an abuse of the district court's discretion.

Likewise, a trial court's decision to relinquish jurisdiction over a defendant after he or she completes a rider is reviewed for an abuse of discretion. *State v. Merwin*, 131 Idaho 642, 648, 962 P.2d 1026, 1032 (1998). Relinquishment of jurisdiction will not be deemed an abuse of discretion if the court had sufficient information before it to determine that probation would be inappropriate. *Id.*

McGuire's instant offense has been adequately set forth herein. Furthermore, McGuire voluntarily "offered information of his ... sexual relationship with this sister ... and three daughters from a previous marriage" during interviews with his presentence investigator. McGuire even referred to T.C. as his "love partner." McGuire told the investigator that he had been ordered to seek psychosexual counseling as a result of this prior uncharged misconduct. The presentence investigator concluded that McGuire "does not take responsibility for any wrongdoing" and did not "reflect remorse for the instant offense or past sexual behavior towards his siblings and children." The court thereafter imposed the instant sentence and placed McGuire on a rider.

While on his rider at the North Idaho Correctional Institution (NICI), McGuire was "adamant in his denial that he was guilty of this crime." McGuire claimed that S.M. "made the charges only as a way of getting revenge against him," and interviewers noted that McGuire "showed no shame or remorse" for his crime. McGuire "insisted he had no problems to take into treatment." In summation, McGuire's "denial and avoidance of dealing with his crime became the theme of [his] dealings with everyone on the compound." NICI recommended that the district court relinquish jurisdiction.

McGuire asserts that the district court abused its discretion in imposing sentence because it did not adequately consider his rehabilitative potential and his expressions of remorse, and that the court abused its discretion when it relinquished jurisdiction over him because it did not properly consider his performance at NICI. We disagree. The district court specifically addressed McGuire's rehabilitative potential and expressed "concern about the issue of denial." The court had serious questions regarding "whether [McGuire] can get past denial and get into productive rehabilitation." The district court also felt that the "protection of society is, of course, a concern and has to-does play a role" in sentencing. As stated many times before, the protection of society is, and must always be, the ultimate goal of any sentence. *State v. Moore*, 78 Idaho 359, 363, 304 P.2d 1101, 1103 (1956). Furthermore, contrary to McGuire's assertions regarding the relinquishment of jurisdiction, McGuire's performance while at NICI demonstrates that he was not particularly amenable to treatment in the community.

Based upon our complete review of the record, especially McGuire's long history of sexual abuse perpetrated on his minor daughters and his denial of any wrongdoing in this case, we conclude that the district court did not abuse its discretion by relinquishing jurisdiction over him and ordering into execution a modified sentence of ten years, with one year fixed, after McGuire completed his rider.

## IV.

## CONCLUSION

McGuire's judgment of conviction and unified sentence of ten years, with one year fixed, are affirmed.

LANSING and PERRY, JJ., concur.