**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 32029**

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | 2007 Opinion No. 11 |
| | ) | |
| Plaintiff-Respondent, | ) | Filed: March 8, 2007 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| THEODORE J. KREMER, III, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Deborah A. Bail, District Judge.

Judgment of conviction for lewd conduct with a minor under sixteen and for intimidating a witness, <u>affirmed</u>.

Greg S. Silvey, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Lori A. Fleming, Deputy Attorney General, Boise, for respondent. Lori A. Fleming argued.

---

GUTIERREZ, Judge

Theodore J. Kremer, III appeals from the judgment of conviction entered upon jury verdicts finding him guilty of lewd conduct with a minor under sixteen and for intimidating a witness. Specifically, Kremer contends the district court erred by admitting evidence of prior bad acts and alternatively argues that it was error not to allow evidence regarding the disposition of criminal charges stemming from the prior bad acts. We affirm.

## I.

## FACTS AND PROCEDURE

The facts underlying the charge against Kremer were presented by the state at his trial as follows: In October 2004, eleven-year-old H.S. spent the night at the Kremer house as a guest of Kremer's daughter. At approximately one o'clock the next morning, H.S. woke up to Kremer kneeling on the family room floor next to the futon where she and Kremer's daughter were sleeping. He placed his hand on H.S.'s hand and while she rolled over and pretended to be

1

asleep, he lifted the covers and put his hands under her pajama bottoms and underwear where he proceeded to rub her vagina and buttocks. This continued for approximately ten to fifteen minutes before he left the room. H.S. left the house the next morning and immediately told her mother about the incident. She was taken to the hospital and the abuse was reported to the police.

Kremer was eventually charged by grand jury indictment with lewd conduct with a minor under sixteen, I.C. § 18-1508, and with intimidating a witness, I.C. § 18-2604.[1] Prior to trial, the state provided Kremer notice, pursuant to Idaho Rule of Evidence 404(b), of its intent to introduce the testimony of A.C. and J.L., who would testify that Kremer committed sexual misconduct against them while they were minors living in Tennessee in 1993.

At trial during *voir dire*, counsel for Kremer told the jury panel that Kremer had been charged in Tennessee with sexual touching of two minors, that one count had been dismissed, and that the other was reduced from a felony to a misdemeanor. The state objected, but the district court ultimately allowed defense counsel some leeway in presenting this information to the jury panel.

Prior to the state's opening statement, the parties stipulated to the admission of various exhibits, including Defense Exhibit E which was referred to as "the certified court documents from Tennessee." The court admitted the stipulated exhibits "subject to being stricken" and informed the parties they were free to refer to them in opening statements. No further mention was made of the disposition of the Tennessee charges until defense counsel's opening statement, given after the state had rested and both J.L. and A.C. had testified. Counsel told the jury that the defense would introduce Tennessee court documents showing the count involving J.L., originally charged as a felony child rape, was dismissed and the count involving A.C., also originally charged as a felony child rape, was processed by the courts in July of 1994 as a misdemeanor, child battery. He further stated:

> And Mr. Kremer upon advice of counsel pled guilty, he will tell you, to
> something he did not do in that case just to get it behind him because the

---

[1]     The intimidating a witness charge stemmed from an incident, immediately after Kremer was interviewed by the police regarding H.S.'s allegations, where Kremer contacted H.S.'s father after having explicitly been told by the investigating officer to have no contact with H.S. or her family. H.S.'s father taped the phone conversation where Kremer is heard attempting to persuade the family not to pursue charges.

2

prosecutor, despite the evidence you've heard from [A.C.], offered probation. A probation incidentally enough from which Mr. Kremer was released less than three months later.

Immediately following the defense's opening statement, the state requested the court's permission to take a witness, who was flying back to Tennessee shortly, out of order to rebut the inference that the Tennessee charge was reduced because it had no merit. The court declined, but ruled *sua sponte* that evidence relating to the disposition of the Tennessee sexual misconduct charges was inadmissible. Accordingly, the court struck Defense Exhibit E and instructed the jury that "[n]o evidence was presented to you about the outcome of charges in Tennessee because it is not relevant to the issues before you and should not be considered or discussed by you in any way."

The jury found Kremer guilty of both charges, and he now appeals.

## II.

## ANALYSIS

### A.    Admission of I.R.E. 404(b) Evidence

Ordinarily, evidence of a defendant's other crimes, wrongs, or acts is not admissible to prove the defendant's character in order to show the defendant acted in conformity with that character. I.R.E. 404(b); *State v. Moore*, 120 Idaho 743, 745, 819 P.2d 1143, 1145 (1991); *State v. Martin*, 118 Idaho 334, 336, 796 P.2d 1007, 1009 (1990); *State v. Needs*, 99 Idaho 883, 892, 591 P.2d 130, 139 (1979); *State v. Winkler*, 112 Idaho 917, 919, 736 P.2d 1371, 1373 (Ct. App. 1987). However, such evidence may be admissible for other purposes, including proof of motive, opportunity, intent, preparation, identity, or a general plan. I.R.E. 404(b); *Moore*, 120 Idaho at 745, 819 P.2d at 1145; *State v. Paradis*, 106 Idaho 117, 122, 676 P.2d 31, 36 (1984); *State v. Wrenn*, 99 Idaho 506, 510, 584 P.2d 1231, 1235 (1978); *State v. Avila*, 137 Idaho 410, 412, 49 P.3d 1260, 1262 (Ct. App. 2002).

To determine the admissibility of other act evidence, the trial court is to engage in a two-tiered analysis. First it must determine whether the evidence is relevant for a purpose other than propensity. *State v. Zimmerman*, 121 Idaho 971, 977-78, 829 P.2d 861, 867-68 (1992); *State v. Byington*, 132 Idaho 597, 605, 977 P.2d 211, 219 (Ct. App. 1998). Second, if the evidence is deemed relevant for an appropriate purpose, the court must determine whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice. I.R.E. 403; *Zimmerman*, 121 Idaho at 977-78, 829 P.2d at 867-68; *Byington*, 132 Idaho at 605, 977 P.2d at

3

219. We exercise free review as to the district court's relevancy determination; however, in regards to its balancing of the prejudicial effect and probative nature of the evidence, we will conclude error occurred only upon finding an abuse of discretion. *State v. LaBelle*, 126 Idaho 564, 567, 887 P.2d 1071, 1074 (1995).

In admitting testimony regarding the Tennessee incidents, the district court found the evidence was relevant, explaining that:

> In the instant case, it is relevant and probative that there appears to be an alleged general plan to sexually exploit young females who are in the defendant's home to visit his daughter. The type of sexual misconduct is generally the same. The acts occur when others are present in the home, including when his daughter is nearby. The fact that abuse occurs in the vicinity of others is unusual. There is clear relevance to the existence of a general plan and also to an absence of mistake.

The court then examined whether the risk of prejudice outweighed the probative value of the evidence and concluded, noting the similarity of the general plan of abuse ("repeatedly fondling girls who are spending time in his home because they are visiting his daughter and with others actually in the same vicinity while the abuse occurs"), the evidence should not be excluded on this ground.

Kremer challenges the district court's relevancy determination, arguing the prior and current incidents do not constitute a plan, thus rendering the prior bad acts evidence irrelevant to any allowable purpose of admission. He relies largely on Justice Johnson's dissent in *Moore* which took issue with the majority's opinion that prior instances of abuse of young girls in the defendant's household were admissible as relevant to, among other things shown, a common plan of abuse. Specifically, Kremer argues that two incidents eleven years apart do not constitute a plan. His case is distinguishable, he contends, from cases where "remote" sexual misconduct has been admitted in Idaho under the plan exception of I.R.E. 404(b) as those cases generally concern multiple prior bad acts spread over time that constitute a series or chain of events. But, where decidedly dated prior acts evidence is at issue, the caselaw requires a defendant to have had limited opportunity to commit the offense. Both these scenarios, he concludes, are absent in the instant case. However, it is well settled in Idaho that when a defendant is charged with lewd conduct with or sexual abuse of a minor, testimony of the defendant's prior sexual misconduct may be admissible if it shows a "general plan to exploit and sexually abuse an identifiable group of young female victims."

4

In *State v. Phillips*, 123 Idaho 178, 845 P.2d 1211 (1993), the defendant had been charged with sexual abuse of his niece who was a friend of his daughter, and our Supreme Court, without dwelling on how much time passed between past acts and the abuse at issue, affirmed the admission of testimony by three women who were friends of the defendant's older daughters and whom the defendant allegedly sexually abused when they were minors. The key to the court's conclusion was that the incidents considered together demonstrated the defendant's "general plan to exploit and sexually abuse an identifiable group of young female victims," *quoting Moore*, 120 Idaho at 745, 819 P.2d at 1145.

In *State v. Hoots*, 131 Idaho 592, 961 P.2d 1195 (1998), the Supreme Court examined the similarities in the abuse as alleged by the victim in the case compared to that alleged by another woman who claimed to have been abused by the defendant when she was a minor. The current victim was fourteen years old when she was abused by the defendant. A friend of the defendant's daughter, she was often at the defendant's house and the abuses took place while the defendant's wife and children were not home or were asleep. In comparison, the victim of the alleged "other acts" abuse testified she was fifteen years old when the defendant engaged in sexual misconduct with her. This previous victim was a friend of the defendant's son and similarly testified that the abuse occurred at the defendant's home while his wife and children were absent. Upon these facts, the Court was satisfied there were sufficient similarities between the defendant's misconduct with both victims to demonstrate a general plan by him to exploit and sexually abuse minor females who were friends of his children and visited his home.

This Court addressed similar issues in *State v. McGuire*, 135 Idaho 535, 20 P.3d 719 (Ct. App. 2001) and in *Byington*. In *McGuire*, the defendant had been tried for sexual abuse of his underage daughter, and we approved the admission of testimony from the defendant's three adult daughters who claimed that as minors, they too were sexually abused by the defendant. In finding there was a common scheme or plan, we focused on the fact that while the abuse was separated by a generation, the victims largely testified to similar circumstances surrounding their abuse, including that each incident of misconduct was committed by the defendant against his own female children while they were minors residing in his house. Similarly, in *Byington*, this Court adopted the district court's reasoning that the prior act accuser's testimony was almost identical with respect to the ways the defendant treated the current accusers. 132 Idaho at 607, 977 P.2d at 221. The prior act accuser and the alleged current victims had all testified as to

5

similar grooming leading to the molestation which included befriending, rides, food, money, movies and gifts. Thus, we concluded, the similarities in the defendant's behavior patterns and conduct made the prior acts relevant to a material and disputed issue concerning the crimes charged.

Notably, a lapse of time between incidents, standing alone, does not necessarily make the testimony inadmissible. *See State v. Law*, 136 Idaho 721, 726, 39 P.3d 661, 666 (Ct. App. 2002). In *Moore*, 120 Idaho at 746, 819 P.2d at 1146, our Supreme Court stated that the issue of remoteness generally goes to the weight of the evidence, as opposed to its admissibility. *See also Byington*, 132 Idaho at 607, 977 P.2d at 221. As this Court in *Law* noted:

> "Remoteness and similarity must be considered together because the two concepts are so closely related . . . a prior bad act, despite its remoteness, may still be relevant if it is strikingly similar to the charged offense. Conversely, less similarity may be required where the prior act is closer in time to the charged incident."

*Law,* 136 Idaho at 727, 39 P.3d at 667. (citation omitted). Thus in numerous cases, Idaho courts have held that accusations of prior sexual misconduct allegedly occurring significantly prior to the present charges were still relevant, both where there was evidence the defendant had not had the opportunity to continue the abuse in the interim as well as absent such evidence. *See e.g., LaBelle,* 126 Idaho at 568, 887 P.2d at 1075 (holding, despite several cessations of abuse, that the testimony of two alleged prior victims was relevant, especially given the similarities with the charged conduct); *Moore,* 120 Idaho at 747, 819 P.2d at 1147 (holding that gaps of approximately six and three years do not destroy admissibility where the attenuation was mitigated by the defendant's lack of opportunity during the interim periods); *Law*, 136 Idaho at 727, 39 P.3d at 667 (deciding that evidence of prior sexual abuse, occurring approximately twenty years earlier, was relevant due to the distinct similarities between the incidents); *McGuire*, 135 Idaho at 539-40, 20 P.3d at 723-24 (finding prior acts occurring eighteen to twenty-three years prior to be relevant where there existed distinct similarities and the defendant had limited opportunity to enact his plan of abuse during the gap).

Here, there were several distinct similarities between the Tennessee incidents and the incident in Idaho. There was unequivocally an "identifiable group of young female victims": the friends of Kremer's daughters. Also, the victims all testified the abuse occurred in the defendant's house while his wife and children were home--a fact that, as the trial judge noted, is unusual. The evidence was presented that Kremer committed sexual abuse in a similar manner,

6

against similarly situated victims *on multiple occasions*. Consequently, despite the eleven-year period without any known allegations of abuse by Kremer, we conclude testimony regarding those past acts was relevant. And while the state was allowed to present the testimony of A.C. and J.L., the jury was fully aware the alleged incidents had occurred more than a decade before and were able to take this into account when assessing the weight to give the testimony.

Furthermore, in addition to being relevant to expose a general plan of abuse, Idaho courts have also found such evidence relevant as to the corroboration of minor victims in sex crime cases. *Hoots*, 131 Idaho at 594, 961 P.2d at 1197; *Moore*, 120 Idaho at 745, 819 P.2d at 1145. Due to particular proof problems in these cases, the Idaho Supreme Court considers such corroborating evidence especially relevant. *See State v. Tolman*, 121 Idaho 899, 904, 828 P.2d 1304, 1309 (1992); *Moore*, 120 Idaho at 745, 819 P.2d at 1145. By nature, these crimes usually have only two witnesses, the alleged victim and the defendant. Consequently, the determination of the case often rests upon establishing that the victim's testimony is more credible than that of the alleged perpetrator. *State v. Cross*, 132 Idaho 667, 670-71, 978 P.2d 227, 230-31 (1999); *McGuire*, 135 Idaho at 539, 20 P.3d at 723; *State v. Spor*, 134 Idaho 315, 319, 1 P.3d 816, 820 (Ct. App. 2000). As our Supreme Court noted in *Tolman*, 121 Idaho at 905, 828 P.2d at 1310, in these cases even a minimal defense requires the alleged victim be accused of "falsehood, spite, or delusion." (Citation omitted). Without any corroboration, "the incidents charged in the information possess only the degree of believability as would naturally attach to the testimony of [a child] counterbalanced by the testimony of the alleged perpetrator . . . ." *Id*. Thus, when testimony regarding the events at issue is considered in conjunction with testimony elicited as to prior conduct, a jury is better able to compare "patterns and methods, details and generalities, consistencies and discrepancies, and thereby make a more meaningful and accurate assessment of the parties' credibility." *Id*.

Here, the crux of Kremer's defense was that H.S.'s memory of the alleged abuse was mistaken; thus, H.S.'s credibility was squarely at issue. *See Phillips*, 123 Idaho at 181, 845 P.2d at 1214 (noting that since the defendant's defense theory was that the alleged sexual abuse never occurred, the credibility of the victim was placed directly in issue). The testimony of A.C. and J.L. lent credibility to H.S.'s account of abuse--both that it actually occurred as well as how it occurred because both A.C. and J.L. testified that Kremer abused them as children and that it

occurred under similar circumstances as H.S. recounted. Therefore, the testimony of Kremer's prior bad acts was admissible for corroboration purposes.

Finally, we find no abuse of discretion in the trial court's conclusion pursuant to I.R.E. 403. The court recognized the potential prejudicial effect of the evidence, but also noted what it believed to be its high probative value, given the similarities between the incidents. The district court did not err in admitting evidence of Kremer's prior bad acts.

## B. Exclusion of Disposition Evidence of Prior Charges

Having found the testimony regarding the alleged abuse of two young girls in Tennessee relevant and otherwise admissible, we consider whether the district court's subsequent exclusion of evidence concerning the ultimate disposition of the charges stemming from the Tennessee incidents was appropriate. Among other reasons for excluding this evidence, the district court deemed it irrelevant. Kremer argues that after the district court allowed testimony from the witnesses regarding his alleged sexual abuse of them eleven years prior, the court erred in refusing to allow him to present the jury with evidence that of the two felony counts stemming from the allegations, one was dismissed and the other reduced to a misdemeanor. Specifically, he argues the evidence is relevant, that the court erred in *sua sponte* striking it, and that its exclusion was a violation of his Sixth Amendment rights.

In terms of relevance, Kremer argues that evidence of the dismissal and reduction of the charges has a tendency to make it less probable that the Tennessee acts actually occurred.[2] In other words, the purpose of introducing the evidence was to evoke the inference that the Tennessee prosecutor viewed the cases as weak, and ultimately that the two counts were based on false accusations.

The Idaho Supreme Court addressed a similar issue in *Tolman*. There, the defendant had been charged with sexual misconduct involving several minors. At trial, the district court admitted evidence of prior sexual conduct between the victims and Tolman under I.R.E. 404(b). On appeal, Tolman argued the lower court had then erred in refusing to allow evidence that he had recently been acquitted of prior charges brought by one of the victims in the present case,

---

[2] Idaho Rule of Evidence 401 defines relevant evidence as that "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

8

contending he was entitled to present the evidence since it would tend to dispel the adverse impact of the court's decision to admit evidence of prior uncharged acts of sexual misconduct. In excluding the evidence, the district court had stated:

> [The] issue of credibility is a matter for the jury to determine from all of the various factors that relate to credibility. And the jury may have decided the case for any number of reasons which had absolutely nothing to do with that particular witness's credibility. They may have decided that the witness was truthful, but that some other element which that witness couldn't testify to was not present. Since the court was not present at the trial, I'm in no position to second guess the jury on that.

*Tolman*, 121 Idaho at 906, 828 P.2d at 1311. The Supreme Court in affirming agreed with this reasoning, noting that in *State v. Schwartzmiller*, 107 Idaho 89, 685 P.2d 830 (1984), it had recognized that a not guilty verdict alone does not establish that charges were based on false accusations since a jury cannot convict unless it finds beyond a reasonable doubt that the defendant was guilty. *Tolman*, 121 Idaho at 906, 828 P.2d at 1311, (citing *Schwartzmiller*, 107 Idaho at 92, 685 P.2d at 833). Thus, the only way such evidence is relevant to a victim's credibility (that an incident took place) is if the allegations are "demonstrably false," a conclusion that an acquittal alone does not establish. *See Tolman*, 121 Idaho at 906, 828 P.2d at 1311.

We conclude the crux of this reasoning is applicable to the case here, despite the fact the instant case involves a dismissal and reduction of charges as opposed to a jury acquittal. As the district court recognized, there are numerous possible reasons a charge is not pursued--just as there are numerous possible reasons a jury may acquit. And while the falsity of accusations may be one of the reasons applicable in both situations, it is not the sole reason (or necessarily even the most likely). We therefore agree with the district court that the dismissal of one count and the reduction of the other count is not relevant--it makes it no more or less likely the two witnesses were or were not subjected to sexual misconduct by Kremer.

Kremer contends that even assuming the evidence was not admissible, the district court nevertheless committed an abuse of discretion by striking "evidence that forms a basis of the defense in the middle of trial after the defense had discussed it in its opening statement" subsequent to admitting it pursuant to a stipulation by the parties. However, a review of the record shows the trial judge never was asked to rule on the admissibility of this evidence prior to

9

trial.[3] Rather, upon being informed the parties wished to stipulate to all exhibits, the trial court agreed in general to their admittance, *subject to being stricken.* Kremer provides no authority for his proposition that a court's decision to strike evidence it had not specifically been asked to rule on, after admitting it subject to later being stricken and then determining its irrelevance in context, is an abuse of discretion. Having properly concluded that the evidence was irrelevant, the court was not required to nevertheless allow its presentation to the jury.

Finally, Kremer argues that the court's exclusion of this evidence was a violation of his Sixth Amendment rights to confront the witnesses against him and to present a defense. However, a defendant has no constitutional right to present evidence that is not relevant. *State v. Peite*, 122 Idaho 809, 814, 839 P.2d 1223, 1228 (Ct. App. 1992). Because we have concluded that the disposition of the Tennessee charges is not relevant, Kremer's constitutional claim has no merit.

### III.

### CONCLUSION

The district court did not err in admitting evidence, under I.R.E. 404(b), of Kremer's sexual abuse of two young girls eleven years earlier. Further, the court was also correct in excluding evidence regarding the disposition of the charges stemming from the prior abuse. Accordingly, we affirm Kremer's judgment of conviction for lewd conduct with a minor under sixteen and for intimidating a witness.

Chief Judge PERRY and Judge LANSING **CONCUR**.

---

[3] Subsequent to oral argument, appellant moved to augment the record with the "Defendant's Brief in Support of Motion in Limine to Preclude Evidence at Trial" which he contends showed that the defendant gave notice of his intent to present evidence of the disposition of the Tennessee charges should the court admit evidence of the incidents. The motion includes a passing reference, at best, that such evidence may be offered, and does not show that the judge was asked to rule on its admissibility.